[No. 10901.   Department Two.   October 9, 1913.]

KITSAP COUNTY TRANSPORTATION COMPANY, INCORPORATED,
*Appellant*, v. THE CITY OF SEATTLE, *Respondent*,
WEYMOUTH CONSTRUCTION COMPANY,
*Defendant*.[1]

MUNICIPAL CORPORATIONS—OBSTRUCTIONS IN NAVIGABLE WATERS—
LIABILITY. A city is not liable for injuries sustained on account of
obstructions in navigable waters within its borders, in the absence
of statute expressly imposing upon it the duty of keeping such
waters open and free from obstruction.

SAME—OBSTRUCTIONS—LIABILITY—ORDINANCES—CONSTRUCTION. Un-
der Seattle city charter, art. 12, §§ 1 and 5, providing that the city
shall exercise control of the harbor and water front, and appoint a
port warden, and under ordinances making it unlawful for any one to
discharge or deposit any refuse in the waters of Elliott Bay, and
making it the duty of the port warden to enforce the ordinances, no
duty is imposed upon the port warden or assumed by the city to
remove debris cast into the harbor.

SAME—ORDINANCE—LIABILITY FOR NEGLIGENCE IN ENFORCING ORDI-
NANCE. A city is not civilly liable for the negligence of its port
warden in failing to enforce an ordinance prohibiting persons from
casting debris in the navigable waters of the city.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered June 27, 1912, upon sustaining a
demurrer to the complaint, dismissing an action in tort, after
a trial to the court. Affirmed.

*Walter A. Keene* (*J. H. Buchanan*, of counsel), for appel-
lant.

*James E. Bradford* and *C. B. White*, for respondent.

MAIN, J.—The purpose of this action was to recover dam-
ages for alleged negligence. The material allegations of the
complaint were, that the plaintiff was the owner of the steamer
Kitsap, which was operated between the port of Seattle and

[1]Reported in 135 Pac. 476.

22—75 WASH.

other ports on Puget Sound; that there was in full force and effect an ordinance of the city of Seattle providing, among other things, that it shall be unlawful to throw, discharge or deposit any refuse matter of any kind or description into the navigable waters of Elliott Bay, or to float saw logs, timbers or piles in the harbor of the city in such manner as to obstruct or impede navigation; that the ordinance imposed upon the port warden of the city of Seattle the duty of exercising vigilant control and supervision over the harbor and waters of Elliott Bay; that the Weymouth Construction Company did carelessly and negligently discharge and deposit certain timbers and piles into the harbor and waters of Elliott Bay, and carelessly, negligently and unlawfully floated loose timbers and logs therein; that the city of Seattle, its agents and servants, negligently and carelessly permitted loose timbers, logs and pieces of piles to be thrown into the navigable waters of Elliott Bay; and that, while the plaintiff's steamer Kitsap was leaving the port of Seattle, one of the timbers, so thrown into the waters and allowed to remain there, came into contact with the propeller of the steamer Kitsap, causing the damage complained of.

To the complaint, the defendant city interposed a general demurrer, which was sustained by the trial court. Thereupon the plaintiff elected to stand upon its complaint and refused to plead further. Judgment of dismissal was entered, from which an appeal was taken.

The sole question here for determination is whether or not the city, in exercising control over the harbor and waters of Elliott Bay in front of the city of Seattle, is liable in damages for failure of the port warden to enforce an ordinance which provided for the keeping of the harbor free from debris.

Waters within the limits of a municipality which are highways for the state, interstate and foreign commerce, are primarily under the control of regulations promulgated by the Congress of the United States. But the state, on account of its interest in the navigable waters within its borders, may

properly assume control thereof and cause the removal of obstacles which may be a menace to navigation, provided the regulation of the state does not conflict with the action of Congress. The general rule is that the city is not liable to a person sustaining injuries on account of some obstruction in the navigable waters within its boundaries unless the duty to keep such navigable waters opened and free from obstruction has been expressly imposed upon it by an act of the state legislature. *Coonley v. City of Albany,* 132 N. Y. 145, 30 N. E. 382; *Goodrich v. Chicago,* 20 Ill. 445; *Seaman v. Mayor etc.,* 80 N. Y. 239, 36 Am. Rep. 612.

In the case first cited, it is said:

"The river being a highway for state, interstate, and foreign commerce, is subject to regulation by congress; but the state because of its great interest in the continuing availability of navigable waters within its borders for vessels, may properly assume to remove such obstacles as may from time to time prove a menace to successful navigation, provided always that it does not impair freedom of navigation under the acts of Congress, or interfere with any system of improvement provided by the general government. But while the general government, together with the aid of the state government, may, and generally does provide for the removal of obstacles, which are a hindrance to navigation, and the doing of other necessary things for the encouragement and protection of commerce; and performance in that respect is regarded as a duty, still it is not one that the individual may enforce. Judge Agnew in the *Winpenny* case, [65 Pa. St. 135-140] said 'It is not a duty of perfect obligation, but one of voluntary assumption or imperfect obligation, inasmuch as it cannot be enforced against the will of the state.' The state may not only undertake, at its expense to remove obstructions in, and generally improve the condition of navigable waters, but in its discretion it may place the burden of performance on a city or county more immediately and beneficially interested than other portions of the state. (*County of Mobile v. Kimball,* 102 U. S. 691.) It seems to be clear, however, that in order to charge a municipality with the duty and burden of improvements primarily existing in the general and state governments, which they can perform or not as the wisdom of con-

gress or the legislature may suggest, a determination which could not be directed or interfered with by the courts at the instance of a complaining party, that it must appear from the act alleged to contain the requirements, that it was the intention of the legislature to place upon the municipality the burden of doing all that the state should have done, and more than it could be required to do. As we read the decision in the *Winpenny* case cited by the appellant, it is in no wise opposed to the views so far expressed. In that case the statute provided that the city should 'keep the navigable waters within said city open and free from obstructions,' and the court held that the duty being express the consequences of a failure to perform rested on the city."

The appellant recognizes this general rule, but contends that the present case falls within the principle stated in *Winpenny v. Philadelphia*, 65 Pa. St. 135. In that case the city of Philadelphia was held liable for negligently permitting an obstruction to remain in the Schuylkill river, which occasioned the plaintiff's damage. The decision, however, is based solely upon an act of the legislature of the state of Pennsylvania which expressly imposed upon the city the duty to "keep the navigable waters within said city open and free from obstruction." It is contended that there should be no difference in the application of the principle where the duty is voluntarily assumed by the municipality, from that where the duty has been expressly imposed by the legislative fiat. In this state there is no statute expressly imposing such a duty upon a municipality, but the city of Seattle in its charter voluntarily assumed the management and control of the harbor and water front thereof. It will be assumed, but not decided, that the application of the principle should be the same whether the duty is expressly imposed by legislative will or voluntarily assumed by the city. The question then arises, Do the charter and ordinances of the city of Seattle relative to the management and control of the harbor fronting thereon make the principle stated applicable? Article 12, § 1, of the city charter, provides:

"The city council shall, unless otherwise prescribed by the laws of the state, exercise control and management of the harbor and water front of the city of Seattle, and shall, by ordinance, establish such rules and regulations as shall prevent any encroachment upon the tidal area of the same."

Section 5 of the same article provides that the mayor, by and with the advice and consent of the city council, shall appoint a port warden who shall perform such duties not inconsistent with the charter. It will be observed that, by section one of this article, the city of Seattle assumed the management and control of the harbor and water front, and by section five, authorized the mayor of the city to appoint a port warden whose duties should be prescribed by ordinance. In pursuance of such charter authority, the city council passed Ordinance No. 15,481, which was approved February 26, 1907. This ordinance covers various matters pertaining to the management and control of the harbor. By § 7 thereof, it is made unlawful for any one to discharge or deposit any refuse matter of any kind or description into the navigable waters of Elliott Bay. By § 14, a penalty is imposed upon any one who may violate this or two other sections of the ordinance. By § 33 of the ordinance, it is made the duty of the port warden to exercise vigilant control and supervision over the harbor, and to enforce all of the ordinances of the city in relation thereto. Our attention has been directed to no provision in the charter or the ordinance where the duty is imposed, either upon the city or the port warden, of removing debris which may be cast into the harbor. But the ordinance imposes a penalty on all who may thus transgress its provisions, and places the duty upon the port warden of enforcing it. If, then, the city is liable in damages, it must be by reason of the negligence of the port warden in failing to enforce the ordinance. The general rule is that a city is not civilly liable for neglect of duty on the part of its officers in respect to the enforcement of ordinances. In 4 Dillon, Municipal Corporations (5th ed.), § 1627, it is said:

"Unless there be a valid contract creating, or a·statute declaring, the liability, a municipal corporation *is not bound to secure a perfect execution of its by-laws,* relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons which would otherwise not have happened."

In the present case, the negligence, if any, being that of the port warden in failing to exercise proper diligence in the enforcement of the ordinance, would not render the city liable to respond in damages.

The judgment will be affirmed.

CROW, C. J., ELLIS, and MORRIS, JJ., concur.