[No. 14336. Department One. January 7, 1918.]

GUNNAR LUND, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

MUNICIPAL CORPORATIONS—STREETS—OBSTRUCTIONS—NEGLIGENCE — LIABILITY. It is no defense to an action against a city for negligence in obstructing a street with wire netting that the abutting building, leased to the city, was used for a voting place, in the exercise of a governmental function, where the injury occurred in the street.

SAME—STREETS—OBSTRUCTIONS—LIABILITY OF CITY—QUESTION FOR JURY. The liability of a city in damages for allowing a portion of a street near a cement sidewalk to be obstructed with a low wire netting is a question for the jury, where the plaintiff was using the sidewalk in the ordinary manner on a dark night, there were no lights, and the proximity of the netting was a menace to the traveling public and had existed for a period of time that rendered it a nuisance.

APPEAL—REVIEW—HARMLESS ERROR. Error in instructions relating to a portion of the street not used by the public is harmless where the issue was as to negligence as to a portion of the street used by the public.

Appeal from a judgment of the superior court for King county, Frater, J., entered July 2, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through an obstruction in a street. Affirmed.

*Hugh M. Caldwell* and *Frank S. Griffith*, for appellant.

*O. L. Willett, Frank Oleson*, and *John A. Soule*, for respondent.

WEBSTER, J.—Respondent brought this action to recover damages for personal injuries resulting from a fall occasioned by an obstruction that existed in one of the streets of the city of Seattle. The defendant's challenge to the sufficiency of the evidence and its motions for an instructed verdict and for judgment notwithstanding the verdict returned in plain-

[1]Reported in 169 Pac. 820.

tiff's favor, which were overruled, present the chief question involved in this appeal—the sufficiency of the evidence to sustain the verdict. This the trial court, in passing upon the several motions and in overruling the motion for a new trial, resolved against the contention of the appellant.

There was substantial testimony tending to establish these facts: Prior to October, 1915, Lakeview avenue, one of the streets of the city of Seattle, was laid out and improved for public use and travel by the appellant. The driveway portion of the street, seventy-five feet in width, was paved. Between the curb of the pavement and each sidewalk was an eight-foot parking strip, graded and cleared. The sidewalks were of cement, six feet in width. On the west side of the street, in front of the premises designated as No. 779, Lakeview avenue, between the west side of the cement sidewalk and the property line, there was a graded and level parking strip eight and one-half feet in width. A cement walk, connecting at right angles with the west side of the sidewalk, led to the premises above described. In the fall of 1915, the owner of the premises drove iron stakes about twelve inches high flush with the west side of the cement sidewalk, and flush with the edge of the walk leading to the house. To these stakes were attached several wires, forming a wire netting twelve inches in height along the inner edge of the sidewalk and the walkway above referred to, one of the iron posts which supported the wires being driven at the point where the west line of the cement sidewalk intersected the edge of the walkway leading to the house at No. 779, Lakeview avenue. This obstruction thus erected was more than eight feet from the property line and within the portions of the street which the city had laid out and improved for public use and travel.

On October 20, 1915, the owner of the premises leased the front room of the house to the appellant for the purposes of a municipal election to be held on March 7, 1916, a primary election on February 21, 1916, and for the convenient regis-

tration of electors on January 7 and 8, 1916. From the record it is not clear whether the obstruction had been erected when the city selected the premises at the time the lease was executed. However, it is certain that it existed as early as the month of November, 1915, and was allowed by the city to be and remain in such condition until the respondent sustained the injury on the evening of March 7, 1916, notwithstanding the fact that at least three other persons stumbled over the wire netting prior to the happening of the respondent's injury, one of which accidents occurred during the primary election on February 21, 1916. No lights or warnings of any character were ever placed or maintained with reference to the obstruction, and there was nothing to indicate or disclose its presence when the injury occurred.

Between 7 and 8 o'clock on the evening of March 7, 1916, respondent and his wife walked north along the sidewalk on the west side of Lakeview avenue intending to vote at the polling place maintained by the city on the premises as above described. The respondent was on the inside, or west side of the sidewalk. As they reached the intersection of the walkway leading to the house, the respondent's left foot became entangled in the wire netting and he fell forward upon the cement walk, resulting in the injury for which this action was brought. The night was dark and stormy and there was no light in the vicinity sufficient to reveal the obstruction beside the sidewalk.

It is first urged by appellant that the holding of an election, including the selection of a voting place, is a governmental function, and the city is not responsible for injuries occasioned to the voters on the premises where the election is being held. A sufficient answer to this contention is that the facts in this case show the injury occurred in the street, not on the premises where the election was held.

It is next urged that the city is not liable for injuries received by pedestrians while outside that part of the street improved by the city. This proposition, assumed by the ap-

pellant, is not supported by the facts disclosed by the record, nor is it a correct statement of the law applicable to the condition here shown to exist. Whatever the rule may be as to the duty of the city, after having laid out and improved its streets, to use ordinary care in keeping the entire street from property line to property line in reasonably safe condition for public use and travel, there can be no doubt of its duty to remove obstructions erected in close proximity to the sidewalk which endanger the use thereof by pedestrians, and that for a breach of such duty an action will lie in favor of one injured while using the sidewalk in the usual and ordinary manner.

The wire netting was placed in the west side parking flush with the cement sidewalk. Its existence so close to the pathway was a menacing danger to traveling pedestrians, particularly so on dark and stormy nights. Moreover, it had remained in this position for a period of time that rendered its presence a nuisance. The record shows the plaintiff was using the sidewalk in the ordinary manner:

"Q. Did you or did you not attempt, to use counsel's expression, cut across lots and go in from the sidewalk to the polling place? A. No, sir. I following the sidewalk right up to where it turned into the house, right on the corner of the sidewalk and the cross-road, and my foot caught in the netting. Q. Were you off of the cement sidewalk at all? A. No, sir."

Under such circumstances, the cause was one for the jury, and the evidence sustains the verdict. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Lorence v. Ellensburgh,* 13 Wash. 341, 43 Pac. 20, 52 Am. St. 42; *Prather v. Spokane,* 29 Wash. 549, 70 Pac. 55, 92 Am. St. 923, 59 L. R. A. 346; *Larsen v. Sedro-Woolley,* 49 Wash. 134, 94 Pac. 938; *Blankenship v. King County,* 68 Wash. 84, 122 Pac. 616, 40 L. R. A. (N. S.) 182; *Taylor v. Spokane,* 91 Wash. 629, 158 Pac. 478; *Kiley v. City of Kansas,* 87 Mo. 103, 56 Am. Rep. 443; *Fockler v. Kansas City,* 94

Mo. App. 464, 68 S. W. 363; *McCormack v. Robin*, 126 La. 594, 52 South. 779, 139 Am. St. 549; *Coffey v. Carthage*, 186 Mo. 573, 85 S. W. 532; *Id.*, 200 Mo. 616, 98 S. W. 562; *Niblett v. Nashville*, 12 Heisk. (Tenn.) 684, 27 Am. Rep. 755; *Townley v. Huntington*, 68 W. Va. 574, 70 S. E. 368, 34 L. R. A. (N. S.) 118; *Barnesville v. Ward*, 85 Ohio St. 1, 96 N. E. 937, Ann. Cas. 1912D 1234, 40 L. R. A. (N. S.) 94; *Campbell v. Chillicothe*, 239 Mo. 455, 144 S. W. 408, 39 L. R. A. (N. S.) 451; *Miller v. Missouri Wrecking Co.* (Mo.), 187 S. W. 45; *Shippey v. Kansas City*, 254 Mo. 1, 162 S. W. 137.

There was no error in refusing to give the instructions requested by appellant. Nor is there any merit in the contention that a new trial should have been granted because the instructions given were so conflicting as to confuse and mislead the jury. The conflict, if any, arose because of the giving of certain instructions requested by appellant defining the duty of the city with respect to the portions of the street not used for public travel. Since the injury occurred where, under all the authorities, it was the city's duty to keep the place reasonably safe for ordinary travel, upon which subject the court properly instructed the jury, the error, if any, was harmless. *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711; *Denver v. Stein*, 25 Colo. 125, 53 Pac. 283.

For the foregoing reasons, the judgment is affirmed.

ELLIS, C. J., FULLERTON, MAIN, and PARKER, JJ., concur.