[No. 15704.    Department Two.    March 20, 1920.]

EHRLICH-HARRISON COMPANY, *Appellant,* v.
THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS (399, 407)—TORTS—ACTS OR OMISSIONS OF OFFICERS—PERMIT FOR EXPLOSIVES IN HARBOR—ORDINANCES—CONSTRUCTION. Ordinances against the creation of a nuisance are not violated by a city's issuance of a permit for a scow-load of nitroglycerine to be moored to a buoy in Seattle harbor and permitting it to remain there, ordinances for the issuance of permits for landing explosives providing that they shall not be unloaded within six hours; and an ordinance designating a certain dock for such unloading does not make such permit to anchor illegal.

Appeal from a judgment of the superior court for King county, Allen, J., entered December 13, 1919, dismissing an action for damages to property sustained in an explosion, upon sustaining a demurrer to the complaint. Affirmed.

*Donworth, Todd & Higgins,* for appellant.

*Walter F. Meier* and *Frank S. Griffith,* for respondent.

[1]Reported in 188 Pac. 500.

HOLCOMB, C. J.—Action for damages sustained by plaintiff as the result of an explosion of sixteen tons of nitro-glycerine, constituting the cargo on a scow moored to buoy No. 1, in Seattle Harbor. Plaintiff proceeded against the city of Seattle on the theory that, in issuing a permit and causing the scow to be moored to the buoy, it created and maintained a nuisance. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, and plaintiff electing not to plead further, a judgment of dismissal was entered, from which plaintiff appeals.

At the threshold, we approach the decisive question in the case. Appellant contends that, in permitting the scow load of explosives to remain at the anchorage in its harbor, respondent violated certain sections of its ordinance No. 28,324 and No. 34,379 and thereby created a nuisance *per se*.

Ordinance No. 28,324 is a general fire ordinance, and the portion of it which is applicable to the present case reads as follows:

"Section 26. Explosives on Vessels, How Landed: Every master or other person in charge of any steamboat, vessel or other water craft, having on board any of the explosive substances mentioned in the preceding sections of this ordinance, shall immediately upon arrival in the harbor of the City of Seattle, and before landing at any wharf or dock, notify the harbor master in writing, of the arrival of such steamboat, vessel or other water craft within the harbor, the amount of such explosives on board and the name of the consignee' and the place of destination thereof, and obtain from the harbor master a permit to land such explosive substances, which permit shall specify the dock or wharf where such explosive substances may be landed, and the time when the same shall be unloaded, which time shall not be less than six hours after the issu-

ance of such permit,  . . .  All such explosive sub-
stances shall be discharged, loaded or unloaded under
the supervision of the Chief of the Fire Depart-
ment of the City of Seattle, and shall be immediately
transported to some point without the limits of said
City. . . ."

It does not seem to be seriously contended that the
maintenance of explosives aboard a vessel in Seattle
Harbor violates this ordinance. A careful reading of
the portion above quoted renders it plain that this
ordinance only specifies supervision of loading or un-
loading explosives. The provision for removal of ex-
plosives to some point without the city limits only
applies after the cargo has been landed, and one is
unable to escape the conclusion that the ordinance con-
templates only the regulation of handling explosives
after the vessel has discharged its cargo at a wharf.
Indeed the very title of this section lends aid to that
construction.

Appellant, in its opening brief, states that this ordi-
nance provides that, upon the issuance of such permit,
the explosives must be unloaded within six hours there-
after. The opposite is the case, the ordinance reading
that the time of unloading shall *not* be *less* than six
hours after the issuance of the permit by the harbor
master. Thus there is a period of at least six hours
during which a vessel with a cargo of explosives must
ride at anchor in the harbor. This is indeed somewhat
in aid of the discussion that follows pertaining to the
construction of ordinance No. 34,379.

Appellant contends that, disregarding ordinance No.
28,324, the respondent violated ordinance No. 34,379.
The portions of the latter ordinance applicable here
are contained in sections 9, 33, 38 and 39 and read as
follows:

"Section 9. It shall be unlawful for any master or person having charge of any vessel to anchor or make the same fast in the waters of the fairway or anchorage, without first obtaining the permit therefor from the port warden and paying anchorage as follows: . . .

"Section 33. No master, or other person in charge of any vessel or obstruction, shall attach the same to any city buoy until he shall have obtained permission so to do from the port warden: . . .

"Section 38. Every vessel lying at any powder dock or at anchor within Seattle Harbor which has a cargo, or part cargo, of dynamite, ignition caps, blasting or sporting powder, or other high explosive or explosives, in any form, shall, between sunset and sunrise display at some point not exceeding twenty (20) feet above the hull of such vessel one red light . . .

"No person shall on any pier, or other structure, except on the powder dock or on powder boats, within Seattle Harbor, store or have on hand for sale, or sell, or keep any powder, ignition caps, dynamite or other like explosive, either by day or night.

"No vessel with a cargo, or part cargo, of powder, ignition caps, dynamite or other like explosive, arriving at Seattle Harbor, shall lie alongside of or make fast to any pier until the port warden shall have issued a written permit so to do. . . .

"Every vessel carrying a cargo of explosives in any form, while lying at anchor or at a city buoy, or alongside of the powder dock, shall at all times, both by day and night, have on board a competent and sufficient crew, . . .

"Section 39. The Harrison Street municipal pier is hereby designated for use temporarily as a powder dock, and for use exclusively for the handling of powder, dynamite and other like explosives, and as a place for vessels carrying as cargo, or part cargo, such explosives. Any vessel shall be allowed to lie at said pier only after a written permit shall have been issued by the port warden."

It is appellant's contention that there is no authority in ordinance No. 34,379 for permitting vessels carry-

ing nitro-glycerine to anchor at any place in Seattle harbor except at the powder dock; and, this being so, when the port warden permitted a vessel carrying such explosive to anchor at one of the city's buoys, he violated the provisions of the ordinance.

Appellant seeks to read into the ordinance a meaning that we are unable to find therein when it says:

"The section [referring to section 38] requires that vessels carrying dynamite and explosives of like character will lie at the powder dock, and that vessels carrying other explosives may anchor either there or in the bay."

We have studied the section very carefully and find therein no classification or differentiation in method of handling explosives. The regulations cover all kinds of explosives in like manner, and the language in each case is most comprehensive in that regard. Reading section 38 alone, it would be difficult to maintain, with any show of reason, that the ordinance did not contemplate permissible storage of explosives either on the powder wharf or on boats at anchor or at buoys in Seattle harbor.

Appellant places its main reliance upon section 39 of the ordinance, above quoted, contending that the section clearly provides that the Harrison street pier is to be used exclusively as a place for vessels (entering Seattle harbor) carrying explosives. In behalf of this contention, it cites and relies strongly upon the case of *Seattle v. Lloyds' Plate Glass Ins. Co.,* 253 Fed. 321, decided by the circuit court of appeals upon the same event which gave rise to the present case. Although recognizing that the language of the ordinance is not at all clear and that it did contemplate the anchorage of vessels having on board cargoes of explosives in Seattle harbor, that court concluded that there is nothing in the ordinance authorizing the port warden

to permit any vessel with this kind of a cargo to tie up to buoy No. 1, and that the provisions relative to anchorage of vessels of this kind in Seattle harbor do not apply to the scow here in question.

While section 39, taken alone, would negative the thought, taking into consideration every section of the ordinance relating thereto, and with all respect to the circuit court of appeals, we do not feel bound by, and are forced to take a view not in consonance with, the decision in the *Lloyds' Plate Glass Ins. Co.* case. So viewing it the language of section 39 is necessarily limited to what we consider its true meaning, designating, temporarily, Harrison street pier ''as a place for vessels carrying as cargo, or part cargo, such explosives'' (in the handling thereof). It is the only interpretation that can be given to the ordinance which will give effect to every part thereof. The cargo of this scow was not to be handled at the time, but was awaiting the arrival of a ship to take it to the Orient. With this interpretation of section 39, it is clearly within the contemplation of the ordinance, as set forth in the quoted portions of section 38, that vessels with cargoes of explosives shall be permitted to ride at anchor in Seattle harbor. Section 9 of the ordinance compels the obtaining of a permit to anchor within Seattle harbor from the port warden, and specifies charges therefor. Section 33 compels the master of a vessel to obtain a permit from the port warden before attaching his vessel to any city buoy. Certainly, in our view of the meaning of this ordinance, the port warden acted in a lawful manner in issuing the permit in this particular case.

We have examined the cases of *Kitsap County Transportation Co. v. Seattle,* 75 Wash. 673, 135 Pac. 476, Ann. Cas. 1915C 115, and *Fluckiger v. Seattle,* 103 Wash. 330, 174 Pac. 456, L. R. A. 1918F 780, cited by

respondent, and we do not find them in point on the theory of plaintiff's complaint. This action is for damages for the unlawful doing by the city of a positive act. Those cases both rest upon the nonfeasance of city employees in failing to enforce city ordinances.

The above discussion, it seems to us, disposes of the entire case, and it becomes unnecessary to here note the other points raised by appellant. We have examined them and do not find that they bear upon the question, in view of our holding.

The judgment of dismissal should stand, and it is affirmed.

BRIDGES, TOLMAN, FULLERTON, and MOUNT, JJ., concur.