[No. 33505. Department Two. May 17, 1956.]

PATRICK GOGGIN, JR., *by his Guardian ad Litem, Patrick Goggin, Sr., et al., Appellants,* v. THE CITY OF SEATTLE, *Respondent.*[1]

*Lenihan & Ivers,* for appellants.

*A. C. Van Soelen* and *John A. Logan,* for respondent.

ROSELLINI, J.—This action was brought to recover damages for the wrongful death of Michael Goggin, four years of age, and for injuries to Patrick Goggin, Jr., nine years of

[1]Reported in 297 P. (2d) 602.

age, both sons of the plaintiff Patrick Goggin, Sr. The death of Michael and the injuries to Patrick Goggin, Jr., were the result of an accident which occurred on east 60th street in Seattle, between 35th avenue N. E. and 40th avenue N. E., at approximately five p. m., on January 20, 1954, when a sled on which they were coasting struck the rear of an automobile parked in front of the residence of the owner, William Lupo.

The vehicle was lawfully parked, except that it had been standing in the same position for from three to five months.

The complaint was founded upon two theories: (1) that the city had negligently failed to maintain its streets free of obstructions and in a safe condition for their intended use, which negligence resulted in the death and injuries while the street was being used as intended by the defendant and pursuant to its express invitation; and (2) that the city had maintained or permitted a nuisance on a public street, which had caused the death and injuries.

In answer to special interrogatories, the jury found that the plaintiff was entitled to recover from the defendant on the ground of nuisance and on the ground of negligence, and awarded damages in the total sum of $10,624.78. The court had previously instructed the jury that the parked vehicle was a nuisance. The defendant was granted a judgment notwithstanding the verdict, and the plaintiff has appealed.

It appears that on January 16, 1954, an unusually heavy snowfall occurred in Seattle, which immediately gave rise to a number of sledding accidents. The snowfall had been anticipated by the city officials, and arrangements were made to barricade certain portions of streets which were to be used for sledding and from which moving traffic was to be excluded. Among the areas set aside for this purpose was the portion of east 60th street on which the accident involved in this case occurred, which is on a hill sloping from west to east. A permit was issued by the city engineer on January 16th, and the streets were barricaded by members of the police department, who then supervised the entry and exit of vehicles going to and from residences within the barricaded area. Members of the police department also saw

that the barricades were lighted at dusk and removed at ten o'clock each evening. The local newspapers carried announcements of the barricaded areas and the request of the city officials that these areas, which were designated as safe, be used instead of nonbarricaded streets for sledding.

Several automobiles were parked in front of residences on east 60th street, within the barricaded area, and their owners were individually asked to remove them. According to the testimony of the policemen who made these requests, all of the cars were moved except the Lupos' vehicle, which was not discovered until noon of the day of the fatal accident. Mrs. Lupo was asked to move the vehicle around the corner. She informed the policeman that she could not drive but would have her husband move it when he returned home, which would be around 4:30 p.m. The policeman stated that he did not move the vehicle himself because he had no authority to do so. Mrs. Lupo testified that she called a towing company immediately after the request was made, but was informed that the hill was too slippery for the tow truck to operate on. She was informed that the automobile could be moved if ropes were tied around the tires. Mr. Lupo testified that when he arrived home, his wife so advised him, and he began to search for materials to tie around the tires but had not succeeded in assembling these when the accident occurred.

The testimony disclosed that the vehicle was not in running order and had not been used for several months, but that since it was parked on a downhill slope, it could have been moved out of the barricaded area with very little effort.

On the afternoon of the fatal accident, the mother of the Goggin boys had sent them to a grocery store at the top of the hill and allowed them to take the sled. After they made their purchases, they started down the hill on the sled. Patrick Jr., the older boy, sat behind Michael on the sled and guided it with a rope. At the trial, he did not remember seeing the parked car and could not recall how the accident happened. A witness testified that, part way down the hill, the boy seemed to lose control of the sled, and by the time he had straightened it out, he was directly behind the ve-

hicle. Both boys struck the bumper and were thrown under the car. Michael was dead upon arrival at the hospital, and Patrick Jr. suffered injuries for which he was hospitalized for ten days and confined to bed for an additional thirty days.

The judgment notwithstanding the verdict was granted upon the theory that the defendant city was immune from liability.

 In prosecuting his case on the theory of negligence, the plaintiff relied upon the rule that, in the construction and maintenance of its streets, a city acts in its proprietary rather than its governmental capacity and is therefore not immune from liability. Granting the correctness of that rule, this case does not fall within it. The setting aside of the portion of east 60th street for sledding and the directing of traffic thereon were acts of supervision and control, not maintenance. In the ownership, control, and supervision of its streets, a municipality acts in its governmental and not its proprietary capacity, and for negligence in the performance of such a function, it is immune from liability. *Lakoduk v. Cruger*, 47 Wn. (2d) 286, 287 P. (2d) 338; *Bradshaw v. Seattle*, 43 Wn. (2d) 766, 264 P. (2d) 265. Assuming, therefore, that the defendant city was negligent in failing to clear the barricaded street of parked vehicles, this was negligence for which the city could not be held liable.

In seeking to uphold the jury's verdict on the ground that the city had maintained or permitted the existence of a nuisance, the appellant relies upon two city ordinances and Rem. Rev. Stat., § 9914 [*cf*. RCW 7.48.120]. The latter provides:

"Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures, or endangers the comfort, repose, health, or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, . . . any public park, square, street, or highway; or in any way renders other persons insecure in life, or in the use of property."

Seattle ordinance No. 80998, § 91 (n), provides that it shall be unlawful to park or angle park a vehicle upon any

city street for a period longer than twenty-four hours; and § 109 declares a vehicle so parked to be a nuisance, which may be summarily abated by or under the direction of a police officer.

Seattle ordinance No. 38045, § 17, declares that any animal or thing which, without a proper permit, shall occupy a public place for more than twenty-four hours, is a nuisance, which shall be summarily abated by the superintendent of streets and sewers or an employee or police officer acting under his direction.

Essentially, the argument of the appellants is this: By ordinance, the city has declared that an automobile parked in one place for more than twenty-four hours is a nuisance, which the employees of the city have a duty to abate. The automobile in question had been parked in one place for from three to five months, therefore, the city had constructive notice of its presence there and, by failing to impound it, "permitted" the existence of a nuisance; and consequently the rule of governmental immunity does not apply.

It is true that governmental immunity does not extend to the creation or maintenance of a nuisance, even though in creating or maintaining such nuisance, the city is exercising a governmental function. *Taylor v. Spokane*, 91 Wash. 629, 158 Pac. 478; *Bales v. Tacoma*, 172 Wash. 494, 20 P. (2d) 860; *Southworth v. Seattle*, 145 Wash. 138, 259 Pac. 26; *Ferry v. Seattle*, 116 Wash. 648, 200 Pac. 336, 203 Pac. 40; *Kuhr v. Seattle*, 15 Wn. (2d) 501, 131 P. (2d) 168. In all of these cases, the nuisance complained of was created in whole or in part by the city itself. In *Lund v. Seattle*, 99 Wash. 300, 169 Pac. 820, the city was required to answer in damages to one who had stumbled over a wire fence which the city had permitted to be constructed and to remain in the street. While the court remarked that the fence, or netting, had been in place long enough to constitute a nuisance, the case was decided on the theory that the city was guilty of negligence in the maintenance of the street, a theory inapplicable here.

We have found no case in which this court has held a city liable for "permitting" a nuisance to exist merely

through its failure to enforce an ordinance. On the other hand, we have repeatedly held that a municipality may not be liable for injuries resulting from a neglect of duty on the part of its employees in failing to enforce its ordinances. *Kitsap County Transp. Co. v. Seattle*, 75 Wash. 673, 135 Pac. 476; *Fluckiger v. Seattle*, 103 Wash. 330, 174 Pac. 456; *Hub Clothing Co. v. Seattle*, 117 Wash. 251, 201 Pac. 6; *Kotkins v. Seattle*, 119 Wash. 590, 206 Pac. 11.

In *Kitsap County Transp. Co. v. Seattle, supra,* the city had passed an ordinance (1) making it unlawful to throw, discharge, or deposit any refuse matter into the navigable waters of Elliott bay, or to float saw logs, timbers or piles in the harbor of the city in such manner as to obstruct or impede navigation; and (2) imposing on the port warden of Seattle the duty of exercising vigilant control and supervision over the harbor and waters of Elliott bay. The plaintiff's boat was damaged when its propeller came into contact with timbers which had been thrown into the bay by a third party and allowed to remain there. It was the plaintiff's contention that the ordinance in question imposed upon the port warden the duty of keeping the water free from obstructions, and that he, as the agent of the city, was negligent in failing to do so, thus rendering the city liable. We pointed out that the duty imposed upon the warden was that of enforcing the ordinance, and held that the city is not liable for neglect of duty on the part of its officers in respect to the enforcement of ordinances.

In *Fluckiger v. Seattle, supra,* a person injured in a coasting accident sued the city for failure to enforce an ordinance forbidding coasting on the city streets. We cited and followed *Kitsap County Transp. Co. v. Seattle, supra.* In the course of the opinion, we quoted with approval the following from 4 Dillon, Municipal Corporations (5th ed.), § 1627:

"Unless there be a valid contract creating, or a statute declaring, the liability, a municipal corporation is not bound to secure a perfect execution of its by-laws, relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforce-

ment, although such neglect results in injuries to private persons which would otherwise not have happened."

And in the very recent case of *Lakoduk v. Cruger, supra,* this court refused to hold the city of Spokane liable for creating a nuisance when it failed to operate a traffic signal so as to warn traffic of an approaching fire truck, there being no statutory duty imposed upon it to install and operate such signals.

■ There is in this state no statutory duty imposed upon a municipality to keep its streets free from nuisance. If the car, parked as it was for more than twenty-four hours, became a nuisance as defined by the ordinance, it was not one for which the city can be held liable, since the city neither created nor maintained it; and if it "permitted" its existence, it did so only in so far as its employees negligently failed to enforce its own ordinance. For such neglect of duty, as we have said, a municipality cannot be held liable.

The judgment is affirmed.

HAMLEY, C. J., FINLEY, HILL, and WEAVER, JJ., concur.