[No. 1448-2. Division Two. December 9, 1975.]

ROBERT R. WALTERS, *Appellant,* v. G. A. HAMPTON, ET AL, *Defendants,* THE CITY OF PORT ORCHARD, *Respondent.*

*John G. Cooper* and *Shannon Stafford* (of *Guttormsen,*

*Scholfield & Stafford)* and *Frank A. Shiers* (of *Shiers, Kruse & Roper)*, for appellant.

*John A. Bishop* (of *Bishop, Cunningham & Costello)*, for respondent.

PEARSON, J.—Plaintiff Robert Walters appeals a summary judgment dismissing a tort action brought against the City of Port Orchard. Plaintiff's injuries and resulting damages occurred on February 3, 1972, when he was shot with a rifle by defendant, Gordon A. Hampton, while visiting in the latter's home in Port Orchard.[1]

Plaintiff's claim against the City is based upon the alleged failure of the city's police to protect him from a person with known proclivities for violence with firearms. Respondent City supports the dismissal by asserting the doctrine of discretionary sovereign immunity, *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), and the lack of factual or legal causation, *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974). These defenses furnish the issues on appeal. For the reasons stated below, we affirm the order of dismissal.

In support of his claim, plaintiff presented police records which showed that on three occasions in 1968 and two occasions in 1970 Gordon Hampton's wife complained to the police that her husband, while drunk, had threatened to kill her. On the three 1968 occasions Mrs. Hampton reported that Hampton had aimed a gun at her. Twice the police investigated her complaints and talked to Hampton. In June 1970 and September 1970 Mrs. Hampton again complained Hampton was beating her and had threatened to kill her. In the September incident Mrs. Hampton told the police Hampton had fired a gun at her. She also asked the police to remove a woman Hampton had allegedly

---

[1]Plaintiff also sued Kitsap County and the alleged assailant, Gordon A. Hampton. Neither of these defendants is a party to the appeal. The record is unclear as to the disposition of the cause against Kitsap County. In a trial to the court plaintiff was allowed judgment for $90,000 against the defendant, Gordon Hampton.

brought to the home. The police officers observed no other woman in the house, but took Hampton's gun to the police station. It should be noted Hampton denied firing the gun. The firearm was returned to Hampton 2 days later. On almost all these occasions, the investigating officers found both Mr. and Mrs. Hampton either to have been drinking or drunk.

Between the time Hampton retrieved his gun in September 1970 and February 3, 1972, when plaintiff was shot, the police had no contact with either Mr. or Mrs. Hampton.

Plaintiff's principal theory is that the chief of police had a mandatory statutory duty to prosecute Hampton for violation of city ordinances prohibiting the aiming or discharging of firearms, or to initiate criminal prosecution for assault. Plaintiff's apparent contention is that had Hampton been prosecuted, the gun could have been confiscated in 1968 or 1970 and plaintiff would not have been injured in 1972. Second, plaintiff contends the police had a mandatory and nondiscretionary duty to protect him against the harm which in fact befell him.

Plaintiff agrees the legislature, in enacting RCW 4.92.090 and RCW 4.96.010, did not totally abolish the doctrine of governmental immunity. *Evangelical United Brethren Church v. State, supra; Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975). He argues, however, the City's failure to prosecute Hampton comes within the rule stated in *Evangelical* that the negligence of government agents while carrying out functions pursuant to statutory or regulatory direction, and which entail no executive or administrative discretion, will give rise to sovereign liability. The City, on the other hand, argues that the decision of the chief of police to prosecute violations of city ordinances involves basic policy discretion at the executive level and, even if the failure to prosecute Hampton was negligent, that failure does not and should not subject the City to civil liability.

RCW 35.24.160, the statute relied on by the plaintiff to establish the City's nondiscretionary duty, states in part:

"The chief of police shall prosecute before the police justice all violations of city ordinances which come to his knowledge." Plaintiff contends the "shall" language in this statute imposed a nondiscretionary duty on the Port Orchard Chief of Police to prosecute Hampton for what plaintiff contends were violations of city ordinances. If he is correct, and the statute imposes a nondiscretionary duty to prosecute, municipal liability for damages occurring because of a negligent failure to prosecute may arise. *Campbell v. Bellevue, supra*; 18 E. McQuillin, *Municipal Corporations* § 53.33 (3d ed. Supp. 1974).

While it is true use of the word *"shall"* in a statute generally imposes a nondiscretionary duty, the word has been found to be permissive. *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 97 P.2d 628 (1940). Thus it is always necessary to interpret a statute to effectuate the intention of the legislature. In doing so we must consider the nature of the act, its provisions, the general object to be accomplished, and the consequences which would follow from construing it as either mandatory or directive. *Spokane County ex rel. Sullivan v. Glover, supra.*

Municipal governments are created to provide for and to further the general health, order, peace, and morality, and to provide justice for those governed. *See* 6 E. McQuillin, *Municipal Corporations* § 24.01 (3d ed. rev. 1969). The creation and maintenance of police departments is basic to the accomplishment of those purposes. RCW 35.24.160 is part of a general statutory scheme enacted to provide for the protection of the general public and to control criminal activities in third-class cities of our state. The statute evidences a legislative intent to protect individual interests of every person to the extent those interests correspond to the rights and privileges to which all persons are entitled as members of the community in general. *See also King v. New York*, 3 Misc. 2d 241, 152 N.Y.S.2d 110 (1956); 6 E. McQuillin, *supra* at § 24.05.

■ The provisions of RCW 35.24.160[2] describe generally the powers and duties of a chief of police in a third-class city. His duty to prosecute "all violations of city ordinances which come to his knowledge" clearly involves an initial determination by him that an ordinance has been violated. Once he decides the law has been broken, he must then determine whether the admissible evidence is sufficient to establish a prima facie case. In the case at bench, where the complaints involved husband-wife altercations, the chief of police must also determine the willingness of the complaining spouse to cooperate in prosecution of the other. Such initial determinations are inherently discretionary, and no serious contention can be made that a police chief must institute prosecutions on the basis of every complaint received by his department.

Plaintiff's entire argument is based upon the false premise that arrest and the criminal process is the exclusive method available to the police in dealing with the variety of behavioral or social problems they confront. Urban Police Function Standards 3.2 and 3.3, ABA Standards Relat-

---

[2]RCW 35.24.160 states in full:

"The department of police in a city of the third class shall be under the direction and control of the chief of police subject to the direction of the mayor. The chief of police shall prosecute before the police justice all violations of city ordinances which come to his knowledge. He shall have charge of the city prisons and prisoners and of any chain gang which may be established by the city council. He may pursue and arrest violators of city ordinances beyond the city limits.

"His lawful orders shall be promptly executed by deputies, police officers and watchmen. Every citizen shall lend him aid, when required, for the arrest of offenders and maintenance of public order. With the concurrence of the mayor, he may appoint additional policemen to serve for one day only under his orders in the preservation of public order.

"He shall have the same authority as that conferred upon sheriffs for the suppression of any riot, public tumult, disturbance of the peace, or resistance against the laws or the public authorities in the lawful exercise of their functions and shall be entitled to the same protection.

"He shall perform such other services as may be required by statute or ordinances of the city.

"He shall execute and return all process issued and directed to him by lawful authority and for his services shall receive the same fees as are paid to constables."

ing to the Administration of Criminal Justice (Approved Draft, 1973) provide at page 18:

> The assumption that the use of an arrest and the criminal process is the primary or even the exclusive method available to police should be recognized as causing unnecessary distortion of both the criminal law and the system of criminal justice.
>
> There should be clarification of the authority of police to use methods other than arrest and prosecution to deal with the variety of behavioral and social problems which they confront. This should include careful consideration of the need for and problems created by providing police with recognized and properly-limited authority and protection while operating thereunder:
>
> . . .
>
> (iii) to engage in the resolution of conflict such as that which occurs so frequently between husband and wife . . . without reliance upon criminal assault or disorderly conduct statute;

These standards adequately reflect our views on the discretionary nature of the police function as it pertains to use of the criminal process in handling domestic controversies.

Furthermore, the amount of protection afforded by any individual police department is necessarily determined by the resources available to it. The determination of how these resources can most effectively be used is a legislative-executive decision. Were we to hold a police chief's failure to prosecute every alleged violation of a city ordinance exposes a municipality to civil liability in tort, we would be placing ourselves in a position of having to determine how limited police resources are to be allocated. *Riss v. New York*, 22 N.Y.2d 579, 293 N.Y.S.2d 897 (1968). This is neither a traditional nor appropriate role for the courts to assume. Moreover, such a holding would, in effect, make the City an insurer against every harm imposed by a criminal act where the police had some prior knowledge that criminal activity might be afoot. No such intent can be implied in general legislation[3] such as RCW 35.24.160.

---

[3] Indeed, the enactment of the victims of crimes act, RCW 7.68.010-.900, which abolished civil actions against the State for injuries or

■ For these reasons we find the duty to prosecute provision of RCW 35.24.160 involves basic policy discretion at the executive level, essential to the realization of basic governmental objectives. Negligent acts or omissions with respect to that provision, therefore, will not subject the City to civil liability. *See Evangelical United Brethren Church v. State, supra.*

■ Plaintiff next vigorously contends that the general framework of the statutes and ordinances within which the Port Orchard police operated placed "an absolute, mandatory and hence, non-discretionary duty upon the City of Port Orchard to have properly protected the appellant from the harm which in fact befell him." As a general rule, no civil liability arises for the failure of a city to supply general police protection. *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Henderson v. St. Petersburg,* 247 So. 2d 23 (Fla. Ct. App. 1971); *Huey v. Cicero,* 41 Ill. 2d 361, 243 N.E.2d 214 (1968); *Riss v. New York, supra.* It is also well established that no civil liability ensues from the failure of government agents to enforce the law. *Goggin v. Seattle,* 48 Wn.2d 894, 297 P.2d 602 (1956); *Wegmiller v. State,* 154 Wash. 101, 280 P. 739 (1929); *Fluckiger v. Seattle,* 103 Wash. 330, 174 P. 456 (1918); *Kitsap County Transp. Co. v. Seattle,* 75 Wash. 673, 135 P. 476 (1913). An exception to these rules exists where a special relationship arises between an individual and a municipality so that a duty to use due care in performing duties normally owed to the public in general becomes a duty owed to a particular individual or his class. When this special relationship arises, potential municipal liability also arises. *See Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *Campbell v. Bellevue, supra; Schuster v. New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958). For example, in *Schuster v. New York, supra,* the decedent, after aiding police in the apprehension of a nationally sought criminal,

death caused by criminal acts, indicates the legislature, when it abolished the principle of sovereign immunity, never intended to expose municipalities to such potential liability.

received threats to his life. He told the police of the threats, then demanded and was refused police protection. Three weeks later he was shot to death. The court held that because of the decedent's cooperation with law enforcement authorities a special duty arose on the part of the police to provide protection once the decedent was threatened, communicated the threats to the police, and asked for protection. The City was therefore subject to liability for the decedent's death.

The undisputed facts in the case at bench show the only complaints received by the police prior to the shooting related to the Hampton's marital disputes. The record indicates the last contact the police had with the Hamptons prior to the shooting in February 1972 was in September 1970. In the absence of any allegation that the police knew Hampton posed a danger to the plaintiff, that the plaintiff required protection from Hampton, or that plaintiff was in some particular danger, these facts are inadequate to establish a specific duty owed by the City to plaintiff. *See Huey v. Cicero, supra.*

Finally, we would be remiss in omitting some reference to the causation obstacle affecting plaintiff's action against the City.

In our view, there are too many gaps in the chain of factual causation to warrant submission of that issue to the fact finder. It would require a high degree of speculation for the jury or the court to conclude that some sort of prosecutorial action by the police against Hampton in September 1970 would have prevented plaintiff's injuries at Hampton's hands in February 1972. Such a conclusion would require the assumption of a successful prosecution of Hampton. This in turn would require an assumption that Mrs. Hampton, herself intoxicated on several of the reported occasions, would cooperate with the police as the only potential prosecuting witness. Finally, we would have to assume that Hampton would be incarcerated for the offense, or unable to procure another weapon in the event the one he possessed was confiscated. Factual causation

requires a sufficiently close, actual connection between the complained-of conduct and the resulting injuries. *See La-Plante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Wells v. Vancouver*, 77 Wn.2d 800, 802, 467 P.2d 292 (1970); WPI 15.01, 6 Wash. Prac. 105 (1967). Where inferences from the facts are remote or unreasonable, as here, factual causation is not established as a matter of law.

In addition, the analysis of the majority opinion of the Supreme Court in *King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974), furnishes a further basis for denial of plaintiff's action against the City. Given our discussion above of the ramifications of police liability under the circumstances presented here, the policy of the law (legal causation)[4] should not countenance suits against a city for the basic discretionary action of its police chief relating to potential criminal prosecutions arising from marital conflicts.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.

---

[4]In *King v. Seattle, supra,* proximate cause was analyzed with reference to its two components, *i.e.,* (1) cause in fact, and (2) the policy of the law as to whether legal liability should attach. We refer to this latter component as "legal causation."