590 P.2d 647

**John DOE and Mary Doe as parents and next friend of Jason Doe, a minor, Plaintiffs-Appellants,**

v.

**J. R. "Popeye" HENDRICKS, Individually, and as Chief of Police of the City of Clayton Police Department and the City of Clayton, New Mexico, an Incorporated Municipality, Defendants-Appellees.**

**No. 3391.**

Court of Appeals of New Mexico.

Jan. 18, 1979.

Peter Mallery, Stephen Durkovich, Anne Kass, Albuquerque, for plaintiffs-appellants.

Paul L. Butt, Albuquerque, J. W. Anderson, Tucumcari, Alvin F. Jones, Clayton, for defendants-appellees.

## OPINION

SUTIN, Judge.

This case arises from a summary judgment granted to defendants, the City of Clayton, New Mexico, its Chief of Police and its Police Department. The district court found no genuine issue of material fact as to the duty owed by the Clayton police to plaintiff, a small boy who suffered a sexual assault. We affirm.

On returning home from school at 3:40 p. m. in May of 1975, the victim, aged 12, was accosted and dragged into an abandoned house by an adult male. Two neighbor children in their mid-teens saw the abduction and ran to tell their brother and sister who then went next door to use the neighbors' phone and called the police. The girl calling the police told the officer that a man had taken a small boy into an empty house across the alley and to come quickly. Because the caller did not know the address of the abandoned house she gave the address of her mother's house which was across the alley. The policeman receiving the call told her that someone would come to the house as soon as possible. The dispatcher's report deviates from the above facts. It erroneously identified the caller, the place of the incident's occurrence, and the identity of the victim. Nonetheless, the report communicated that a little boy was going to be beat up.

The dispatcher immediately took the report received from the girl into the office of Hendricks, Chief of Police, the only officer available to respond to the call. In delivering his report, the dispatcher interrupted the officer's conference with an out-of-state sheriff who was investigating a grain theft. The Chief of Police continued his discussion with the visiting sheriff who left at 4:00 p. m.

Because the police had not responded to the call, two of the boys from the family who had witnessed and reported the incident went to the police station. At 3:57 p. m. Officer Larry Vialpando arrived and met the boys coming out of the station. The boys explained the situation to Vialpando and he immediately drove to the abandoned house arriving there at 4:02 p. m. The victim and his assailant were discovered nude in the house. Seventeen minutes had passed between the time of the telephone call to the dispatcher and Vialpando's arrival at the scene of the assault. Plaintiffs sued under the "Peace Officers Liability Act", [§ 39–8–1, et seq. (2d Repl. Vol. 6, 1975 Supp.)] claiming that the City of Clayton waived sovereign immunity when it purchased liability insurance. The City's answer plead the affirmative defenses of sovereign immunity and lack of insurance, but the defendants presented no evidence on the issue. Nor did the City challenge the issue of waiver in the trial court or on appeal. Therefore, we deem the issue abandoned and hold that the City elected to waive the defense of sovereign immunity. *Jackson v. Hartley,* 90 N.M. 428, 564 P.2d 992 (1977).

The "Peace Officers Liability Act" adopted in 1973 was repealed in 1976. Section 27, ch. 58, Laws 1976. It was in effect on May 15, 1975, the date on which the assault occurred. The purpose of this Act was "to protect peace officers from personal liability arising out of certain acts committed during the performance of their activities, in the conduct of their office, and within the scope of their duties  .   .  ..." Section 39–8–2, *supra.* The peace officer is absolved of liability while in the performance of any *public duty* which a peace officer is authorized by law to perform. Section 39–8–4, *supra.* This principle is established law and the "Peace Officers Liability Act" protects a police officer from liability while in the performance of a public duty.

Plaintiffs claim that defendants owed Jason a *special duty beyond that owed to the public in general,* the breach of which gave rise to a cause of action for damages; that Hendricks' failure to respond in time was the proximate cause of Jason's injuries. We disagree.

This is a matter of first impression.

The "special duty" concept of liability acceptable to the courts is stated in 2 Cooley On Torts (4th Ed. 1932), § 300, pp. 385–86. In pertinent part, it reads:

The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a *duty to the public, a failure to perform it,* or an inadequate or erroneous performance, *must be a public, not an individual injury,* and must be redressed, if at all, in some form of public prosecution. *On the other hand, if the duty is a duty to the individual, then a neglect to*

*perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages.* "The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, *and that he has suffered a special and peculiar injury by reason of its nonperformance.*" [Emphasis added.]

*Trautman v. City of Stamford,* 32 Conn. Sup. 258, 350 A.2d 782 (1975); *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); 41 A.L.R.3d 692 (1972); *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind.App. 387, 272 N.E.2d 871 (1971), 46 A.L.R.3d 1077 (1972); *Walkowski v. Macomb Cty. Sheriff,* 64 Mich.App. 460, 236 N.W.2d 516 (1975); *Gerneth v. City of Detroit,* 465 F.2d 784 (6th Cir. 1972).

Absent Cooley, the "special duty" concept of liability has been adopted in other states. *Florida First National Bank v. City of Jacksonville,* 310 So.2d 19 (Fla.App.1975), cert. denied, 339 So.2d 632 (Fla.1976); *Schuster v. City of New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958); *Riss v. City of New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968); *Walters v. Hampton,* 14 Wash.App. 548, 543 P.2d 648 (1975); *Gardner v. Village of Chicago Ridge,* 71 Ill.App.2d 373, 219 N.E.2d 147 (1966); *Hartzler v. City of San Jose,* 46 Cal.App.3d 6, 120 Cal.Rptr. 5 (1975). Annot., *Liability Of Municipality Or Other Governmental Unit For Failure To Provide Police Protection,* 46 A.L.R.3d 1084 (1972); Annot., *Personal Liability Of Policeman, Etc.,* 41 A.L.R.3d 700 (1972); 57 Am.Jur.2d Municipal, Etc. Tort Liability, § 251 (1971).

■ There is a shadowy line separating the duties owed to the general public from those owed to individuals. The determination of this duty is a question of law for the court to decide. *First Nat. Bk., Albuquerque v. Nor-Am. Agr. Prod., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App.1975).

■ A "duty" is "[t]hat which is required by one's station or occupation." *City of Clovis v. Archie,* 60 N.M. 239, 241, 290

P.2d 1075, 1076 (1955). The duty of a police officer is fixed by law; such duty is a "public duty" owed to the public generally by the municipality.

Section 14–12–2(A)(3)(d) states:

The police officer of a municipality shall:

\*　　\*　　\*　　\*　　\*　　\*

(d) apprehend any person *in the act of violating the laws of the state* or the ordinances of the municipality and bring him before competent authority for examination and trial. [Emphasis added.]

■ Inasmuch as this statute is enacted for the benefit of the public and not the individual, no liability may be imposed for failure to carry out the statutory function. *Gerneth, supra.* "As a general rule, no civil liability arises for the failure of a city to supply general police protection." *Walters, supra,* (543 P.2d at 652); *Simpson's Food Fair, Inc., supra.* As stated in *Riss, supra* :

When one considers the greatly increased amount of crime committed throughout the cities . . . it is easy to see the consequences of fixing municipal liability upon a showing of probable need for and request for protection. To be sure these are grave problems at the present time . . . to which the answers are neither simple, known or presently within reasonable controls. To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts. [293 N.Y.S.2d at 898, 240 N.E.2d at 861.]

■ "Governmental units cannot be held 'absolutely liable' for any and all acts or omissions which might cause damage or injury to private citizens." *Simpson's Food Fair, Inc., supra* [272 N.E.2d at 875]. "The extent of potential liability to which such a doctrine could lead is staggering." *Massengill, supra* [456 P.2d at 381.]

This is the rule where a police officer failed to stop drag racing, *Trautman, supra* ; failed to arrest persons violating traf-

fic laws and driving in an unsafe manner, *Massengill, supra* ; failed to halt a wave of criminal activities that forced the closing of a business, *Simpson's Food Fair, Inc., supra* ; failed to protect a woman from a lover who threatened her after she called the police for help, *Riss, supra* ; failed to protect a person from one with known proclivities for violence with firearms, *Walters, supra* ; and failed to protect a wife from an estranged husband 45 minutes after her call to police, *Hartzler, supra.*

The public duty narrows into a special duty when a police officer owes a duty to the person injured. To create such a duty there must be privity, a direct relationship or contact between the victim and the police. Even though there is initially no liability on the part of the City for its acts or omissions, once a police officer under the stated circumstances voluntarily assumes a duty toward the injured party, then the City is subject to the same standard of care as a private person. *Hartzler, supra. Bloom v. City of New York,* 78 Misc.2d 1077, 357 N.Y.S.2d 979 (1974); *McGeorge v. City of Phoenix,* 117 Ariz. 272, 572 P.2d 100 (1977) in which examples of a special duty are set forth in two categories:

(1) *Where there has been a specific promise or representation by police to a victim in a situation which creates justifiable reliance on the part of the victim.* In this category, a special duty arises where a police officer promised the informant police protection, *Schuster, supra,* and where the court ordered police protection, *Baker v. City of New York,* 25 A.D.2d 770, 269 N.Y.S.2d 515 (1966).

(2) *Where a police officer affirmatively causes damage to a victim.* In this category, a specific duty arises where the police brought the victim to a place to identify three assailants and was attacked, *Gardner, supra* ; where a sewer inspector directed the victim to climb into an open trench, *Smullen v. City of New York,* 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971); and where a fire inspector ordered a salvage operator to fill the cargo compartment of a damaged ship with carbon dioxide, *In re M/T Alva Cape,* 405 F.2d 962 (2d Cir. 1969).

In each category, there was a direct contact and special relationship between the police officer or public official and the victim.

Plaintiffs rely on *Florida First National Bank, supra; Veach v. City of Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967) (city assuming responsibility for fire protection), and *Isereau v. Stone,* 207 Misc. 941, 140 N.Y.S.2d 585 (1955). In each situation, by direct contact with the victim, a special duty was created.

These are the rules by which the instant case must be decided. There was no direct contact between Hendricks and the boy that created a special duty. Hendricks did not promise the boy police protection in a situation in which the boy could justifiably rely on the promise. To constitute a "special duty" a "special relationship" must exist between the victim and the police officer—a "special relationship" arising out of some prior circumstances existing between the victim and the officer that imposed a duty on the police officer to protect the victim; a duty that extends beyond the ordinary public duty to protect the victims of crimes committed. No "special relationship" existed.

We do not hesitate to say that Hendricks owed the boy a public duty of protection, one that does not appear to have been performed with alacrity. Under the circumstances, the tragic event that occurred does not allow the recovery of damages. If and when the people of New Mexico desire a change in the public vs. special duty concept, they must seek relief from the legislature, not the courts. The legislature, the representatives of the people, fix the public policy of the State. The duty of the courts is to express that public policy. We have done so in this case.

No genuine issue of material facts is shown by the record and the summary judgment is affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.