NOT DESIGNATED FOR PUBLICATION

No. 124,254

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JASON UNRUH,
*Appellant*,

v.

CITY OF WICHITA, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 1, 2022.
Affirmed.

*Michael Jilka*, of Graves & Jilka, P.C., of Lawrence, for appellant.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, *Jennifer L. Magana*, city
attorney, and *Sharon L. Dickgrafe*, chief deputy city attorney, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Jason Unruh appeals the district court's granting of summary
judgment against him on a variety of negligence claims Unruh brought against the City of
Wichita, Gordon Ramsay, the Chief of Police for the Wichita Police Department, Officer
Daniel Weidner, and Officer Brett Pearce (collectively Defendants) arising out of the
officers' use of force against him. After a careful review of the record, we find that the
district court did not err in granting summary judgment, and therefore affirm its decision
dismissing Unruh's claims.

1

FACTS

On the night of August 5, 2017, Unruh led Wichita police officers on a chase. During the chase, Unruh was observed throwing handfuls of methamphetamines out his driver's side window. Eventually, Unruh's car spun out of control and hit a curb where it came to rest. Unruh climbed out of the driver's side window of his vehicle. Officer Weidner reported he could see something in Unruh's hands. According to Defendants, Officer Weidner then ordered Unruh to stop, but then Unruh began reaching under his car. Officer Weidner thought Unruh might be trying to retrieve a gun. Unruh disputed reaching under the car and stated that he was attempting to collect methamphetamine next to the car, not under it. As Officer Weidner ran up to Unruh, he saw that what he had noticed in Unruh's hands was a large bag of methamphetamine.

The parties agree that Officer Weidner deployed Cassius, a police dog, to apprehend Unruh. Officer Weidner said he did this when Unruh reached under his car, but Unruh alleged that Officer Weidner sent Cassius to attack Unruh before Unruh even left his vehicle. The parties also agree that Officer Weidner kicked Unruh once in the shoulder and once in the head, though their accounts of the reasons the force was applied differed. Officer Weidner said he applied the force as a means to gain compliance from Unruh, whereas Unruh complained that he was not resisting arrest nor posing any threat to the officers. Finally, the parties agreed that Officer Pearce struck Unruh in the face while he was arresting Unruh. Defendants asserted that Officer Pearce struck Unruh "as a distraction technique to get him to roll over onto his stomach so Pearce could effect the arrest."

Further details of the events of that evening will be discussed in connection with the evidence gathered in the course of Unruh's civil lawsuit.

On July 2, 2019. Just under two years after the incident, Unruh filed a lawsuit against Defendants. Unruh alleged that he led the police in a car chase that ended with Unruh wrecking his car and being surrounded by police. Unruh's petition alleged that even though he made no attempt to escape and did not have a weapon, Officer Weidner's police dog Cassius attacked him and caused significant damage. He further alleged that Officer Weidner's actions of kicking and stomping on his head caused a brain bleed. Unruh further alleged that Officer Pearce punched him in the head as he was being handcuffed.

Notably, Unruh's sole claim in his petition was for negligence of the Defendants, though he asserted numerous claims under this umbrella. Unruh asserted that the City was negligent for several reasons: (1) retaining Ramsay as Chief of Police when Chief Ramsay knew or should have known that Officers Weidner and Pearce had a history of excessive and unreasonable use of force and took no remedial action to prevent similar future incidents; (2) failing to properly train its officers in the reasonable use of police dogs in apprehending and arresting suspects; and (3) failing to train officers on proper apprehension of a suspect. Unruh said that Chief Ramsay was negligent for retaining Officers Weidner and Pearce and failing to properly educate, train, discipline, and supervise the officers regarding use of force and anger management. Unruh also asserted that both the City and Chief Ramsay were vicariously liable under the doctrine of respondeat superior for the negligence of Officers Weidner and Pearce.

Additionally, Unruh made several complaints regarding Officer Weidner, asserting he acted negligently by: (1) using deadly force when he stomped on Unruh's head without having a reasonable objective basis to believe Unruh posed a threat to anyone's safety; (2) violating Wichita Police Department policies on use of force; and (3) allowing Cassius to attack Unruh. Next, Unruh asserted that Officer Pearce acted negligently when he punched Unruh in the head, asserting that the punch violated Wichita Police Department policy. Finally, Unruh asserted that both officers acted negligently when they

3

gave multiple, differing commands of compliance to him when he was unable to comply with the commands because he was being kicked in the head and mauled by Cassius. Unruh filed an amended petition in May 2020.

In Defendants' answer, they contended that the officers acted appropriately under the circumstances because Unruh ignored their commands to display his hands and appeared to reach for a weapon. Defendants argued that Unruh's claims were not actually negligence claims, but battery claims, and the one-year statute of limitations barred Unruh from bringing battery claims.

Defendants filed a motion to dismiss Unruh's petition based on the statute of limitations issue in June 2020. The district court heard arguments on the motion the following month. Counsel for Defendants framed the question as whether the petition alleged intentional or unintentional conduct. If the petition alleged intentional conduct, Defendants argued, then it should be construed as a battery claim. If the petition alleged unintentional conduct, then it should be construed as a negligence claim. The district court held that Unruh's pleading stated a valid claim for negligence and denied the motion to dismiss.

Defendants then moved for summary judgment in December 2020 after conducting discovery. Numerous exhibits were included with the motion and Unruh's response. Several videos of the incident were also provided to the court.

The district court granted Defendants' motion for summary judgment and dismissed Unruh's petition against each of them. The court recognized at the outset that Unruh's claim was brought outside the one-year statute of limitations for battery but within the two-year statute of limitations for negligence. The court construed Unruh's claims against the officers for negligent use of force as battery claims because the officers used force intentionally, and "[o]ne cannot negligently commit an intentional act."

The court next rejected Unruh's independent claims against Chief Ramsay and the City on the basis that the public duty doctrine barred the claims. The court also had two other reasons for rejecting Unruh's claims against Chief Ramsay and the City. First, the court found that Unruh failed to identify any evidence to support his negligent supervision and training claims. Second, the court found that Chief Ramsay and the City were entitled to immunity under two sections of the Kansas Tort Claims Act, K.S.A. 75-6104(e) and (n). Finally, the court granted summary judgment to Defendants on Unruh's claims related to improper deployment or training of Cassius. The court held that while there was "no dispute that Cassius bit [Unruh] and caused injury," there was "no evidence that Cassius' behavior was the result of improper use or training."

Unruh has timely appealed the district court's order granting summary judgment to the Defendants.

ANALYSIS

All issues now on appeal were disposed of by the district court on motion for summary judgment. The standard of review applicable to summary judgment decisions is well-established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of

5

undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

*The district court did not err by granting summary judgment to Officers Weidner and Pearce on the basis that Unruh's claim was for battery, not negligence.*

On appeal, Unruh first argues that "[t]his appeal presents the issue of whether a claim of negligent use of force by a police officer exists under Kansas law." He asserts that the district court erred in ruling that Kansas law does not recognize a claim of negligent use of force by a police officer. This somewhat mischaracterizes the district court's ruling. The district court noted that in *Estate of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 714, 459 P.3d 802 (2020), a panel of our court recognized that "in *some* circumstances a person might be able to bring a negligence claim under Kansas law arising out of an incident involving a law enforcement officer's physical contact with that person, resulting in an injury."

In fact, the district court did not dispute this idea. The district court's first ruling denied Defendants' motion to dismiss on the basis that Unruh's pleading properly stated a claim for negligence. But after reviewing the evidence on summary judgment, the district court changed course and held that Unruh's claims were for battery, not negligent use of force. Because of the district court's ruling, on appeal we must carefully examine whether Unruh's claims were, in reality, for intentional battery or unintentional negligence. See *Baska v. Scherzer*, 283 Kan. 750, 156 P.3d 617 (2007) (finding that a court is not bound by the characterization of the claims in a plaintiff's petition because substance prevails over form).

In order to fully understand and rule on the issues raised by Unruh's negligence claims, it is necessary for us to take a deep dive into the confusing and frequently

contradictory string of published cases which have dealt with similar claims. But we begin by defining some basic terms.

In the civil context, "[b]attery is 'the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact[] that is harmful or offensive.' PIK Civ. 4th 127.02." *McElhaney v. Thomas*, 307 Kan. 45, 53, 405 P.3d 1214 (2017). An intent to injure is a necessary element of battery. 307 Kan. at 54. A wrongdoer may be held accountable for battery if he or she has an intent either to cause a physical injury or an offensive bodily contact. 307 Kan. at 55-56.

On the other hand, a negligence claim generally "requires a plaintiff to prove four essential elements: (1) defendant owed a duty to the plaintiff; (2) defendant breached that duty; (3) plaintiff's injuries were caused by the defendant's breach; and (4) plaintiff suffered damages." *Reardon for Estate of Parsons v. King*, 310 Kan. 897, 903, 452 P.3d 849 (2019). "'Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred.' [Citation omitted.]" *Murray v. Modoc State Bank*, 181 Kan. 642, 646, 313 P.2d 304 (1957). "[T]he fundamental distinction between . . . battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional*." *Murray*, 181 Kan. at 646. Several cases have explored this point.

In *Baska*, Celesta Baska brought an action for negligence against Harry Scherzer and Calvin Madrigal after Baska was injured trying to break up a fight between the defendants. 283 Kan. at 751-52. As is true in our case, Baska brought her claims outside of the one-year statute of limitations for assault and battery but within the two-year statute of limitations for negligence. 283 Kan. at 751. The district court dismissed Baska's action after construing it as one for battery. Baska appealed the dismissal. On appeal a

7

panel of our court reversed, primarily because the defendants struck Baska unintentionally. 283 Kan. at 751.

After granting a petition for review, the Kansas Supreme Court reversed the Court of Appeals and affirmed the district court. The court began by noting that "[t]he determinative question is whether the substance of plaintiff's claims against the defendants sounds in assault and battery or negligence." 283 Kan. at 755. The court acknowledged that the facts showed that the defendants intended to strike one another and that the harm they caused Baska was unintentional. It found under the doctrine of transferred intent that Baska only had claims for assault and battery against the defendants, not negligence. The court explained:

"The defendants' acts of throwing punches in this case were *intentional* actions. Each defendant intended to strike at the other in order to cause harm. The defendants intended to punch, and they did punch. The fact that the punches in question hit the plaintiff rather than the defendants is immaterial to the analysis. Because the defendants' actions were intentional, the 'substance' of Baska's action is one for assault and battery. Failure to initiate her action within 1 year of the fight bars her action by reason of the 1–year statute of limitations in K.S.A. 60–514(b)." 283 Kan. at 764.

The focus in *Baska* was on whether the defendants intended the action that caused the injury, not whether the defendants intended the specific injury to occur.

*McElhaney v. Thomas*, 307 Kan. 45, is also instructive in distinguishing between battery and negligence. There, high school student Charles Thomas was driving his truck and attempted to bump fellow student Emma McElhaney, who was walking through the high school parking lot. Thomas ended up driving over McElhaney's feet and injuring her. McElhaney brought suit against Thomas under both negligence and tort theories. 307 Kan. at 47-48. The district court dismissed McElhaney's intentional tort claim because Thomas did not intend to injure McElhaney. 307 Kan. at 50. Thomas ultimately admitted

8

liability for negligence and the jury heard evidence on McElhaney's actual damages. 307 Kan. at 50. McElhaney appealed, and one of the issues on appeal was whether the district court properly dismissed her intentional tort claim against Thomas. 307 Kan. at 46.

The Kansas Supreme Court held that the district court erred when it dismissed the intentional tort claim. It first stated that McElhaney was not required to "plead and produce evidence that Thomas intended to cause physical injury or bodily harm in order to present her battery . . . claim[] to a jury[.]" 307 Kan. at 52. The evidence that Thomas intended to bump McElhaney was sufficient to establish the intent element of McElhaney's battery claim. The court enumerated two ways that the "intent to injure" element of a civil battery claim can be satisfied: "(1) an intent to cause a harmful bodily contact, that is, to cause the other physical injury; or by (2) an intent to cause an offensive bodily contact, that is, to invade the other's reasonable sense of personal dignity." 307 Kan. at 55-56. Thus, an actor is liable for bodily harm resulting from an intentional offensive contact even if the actor did not intend to cause a physical injury or bring about the resulting bodily harm. 307 Kan. at 55 (citing Restatement [Second] of Torts § 16, comment a [1965]).

Given the definitions of battery and negligence and the caselaw distinguishing them, a negligent use of force claim seems contradictory. See *Estate of Randolph*, 57 Kan. App. 2d at 711 ("Upon a cursory look, negligent use of force seems to be a strange tort, since the application of force typically entails an intentional act and, thus, seems at odds with a claim grounded in careless or inadvertent conduct."). A claim of negligent use of force has never officially been recognized by Kansas courts, although the *Estate of Randolph* court recognized that "in *some* circumstances a person might be able to bring a negligence claim under Kansas law arising out of an incident involving a law enforcement officer's physical contact with that person, resulting in an injury." 57 Kan. App. 2d at 714.

9

This reference to the existence of "some" circumstances where a negligence claim might lie for injurious conduct by a law enforcement officer leads us down a winding path of federal and state caselaw. The origins of a negligent use of force claim in Kansas can be traced to *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 667 P.2d 380 (1983). In *Dauffenbach*, a police officer used a jujitsu throw on Robert Dauffenbach while attempting to arrest Dauffenbach for a misdemeanor offense. Dauffenbach was severely injured and paralyzed as a result. He brought an action for assault and battery, but later amended his petition to make a claim for negligence. When the district court entered judgment for the defendants, Dauffenbach appealed and the defendants cross-appealed. The defendants claimed that the district court erred by allowing Dauffenbach to amend his petition to negligence because the cause of action was different from that of the original petition. 233 Kan. at 1029. The Kansas Supreme Court rejected this argument. It noted that Dauffenbach's original petition stated a cause of action for negligence because Dauffenbach alleged that "the defendants did 'negligently assault, beat and injure' him and that any 'negligence' on the part of the officers 'is likewise the negligence' of the city." 233 Kan. at 1032.

As we have noted, a panel of this court examined the tort of negligent use of force more recently in *Estate of Randolph*, 57 Kan. App. 2d 686. In that case, Icarus Randolph's family members called police for help transporting Randolph to a mental health facility. Officers spoke with Randolph's family members for several minutes. Suddenly, Randolph exited the house and walked into the front yard. Officer Ryan Snyder described Randolph as walking aggressively, but his family members said "he was strolling almost aimlessly." 57 Kan. App. 2d at 692. As Randolph approached Officer Snyder, Officer Snyder fired his Taser at Randolph. After getting hit by the Taser, Randolph's arms and hands lifted and Officer Snyder saw that Randolph had a knife with a four-inch blade in his hand. Randolph continued moving forward. Officer Snyder then shot Randolph four times with his firearm, killing Randolph. Officer Snyder said in a deposition that he shot Randolph because he thought Randolph was getting ready to stab

him, though he also said Randolph may have involuntarily lifted his arms in response to the Taser charge. Randolph's estate brought a claim for, among other things, negligent use of force by Snyder for deploying his Taser and firing his pistol at Randolph.

The court summarized the caselaw pertaining to whether Kansas recognizes a tort for negligent use of force as follows:

"Several federal district court judges have indicated Kansas would recognize a claim for negligent use of force and have declined to dismiss those claims as legally unfounded. See, e.g., *Richard v. City of Wichita*, No. 15-1279-EFM-KGG, 2016 WL 5341756, at *8 (D. Kan. 2016) (unpublished opinion); *Patterson v. City of Wichita*, No. 12-CV-1308-JAR, 2014 WL 2533180, at *7-8 (D. Kan. 2014) (unpublished opinion); *Price v. City of Wichita*, No. 12-1432-CM, 2013 WL 6081103, at *4 (D. Kan. 2013) (unpublished opinion). But the Kansas appellate courts have never directly addressed the point. See *Tichenor v. City of Topeka*, No. 106,384, 2012 WL 3136219, at *5-6 (Kan. App. 2012) (unpublished opinion) (court affirms jury verdict for City on negligent use of force claim without considering whether Kansas actually recognizes such a tort); *Grauerholz v. Adcock*, 51 Fed. Appx. 298, 301 n.3 (10th Cir. 2002) (unpublished opinion) (court declines to determine whether Kansas has recognized or would recognize claim for negligent use of force); *Richard*, 2016 WL 5341756, at *8 (noting 'the law is somewhat unclear'). Although *Dauffenbach* . . . was decided under pre-KTCA law, the case lends support for the claim. Without any real discussion, the court allowed the plaintiff to proceed on a negligence theory when a police officer used a martial arts throw to arrest him for a misdemeanor—resulting in catastrophic, if unanticipated, injuries. The KTCA would not undercut the claim as a matter of law. But if the claim were otherwise recognized, the factual circumstances of a given case could trigger one or more immunities in K.S.A. 75-6104." 57 Kan. App. 2d at 712-13.

The *Estate of Randolph* court also explored the distinction between intentional torts and negligence actions based on use of force, citing cases from other jurisdictions, and, importantly for our purposes, held that intentional actions cannot be the sole basis for a negligent use of force claim. 57 Kan. App. 2d at 713 (citing *Ryan v. Napier*, 245

11

Ariz. 54, 59-62, 425 P.3d 230 [2018]; *District of Columbia v. Chinn*, 839 A.2d 701, 710-12 [D.C. 2003]).

The District of Columbia Court of Appeals in *Chinn* began by noting that excessive force claims brought under both negligence and battery theories "'involve an inquiry into the reasonableness of the police officer's actions.'" 839 A.2d at 707. For battery claims, "the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer." 839 A.2d at 707. These inquiries "are identical when a battery, lawful in its inception, escalates into alleged excessive force." 839 A.2d at 707. But just because the inquiries are similar does not mean the causes of action are the same. The court explained:

> "While it may be, as the trial court here noted, that the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force. An unwanted touching may in its inception be intentional, a battery, or accidental, possibly negligent. But once it is found to be intentional, a battery tortfeasor is liable for the full range of consequences, intended or not, including harm and transferred liability. Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege having ended at the point where excessive force began. To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion. It also raises the risk that even where no excessive force is used, the jury will conclude that some undefined negligence was present for which relief of some sort is justified. A battery was committed and the officer is liable unless and only to the extent that the officer is clothed by the privilege. [Citation omitted.]" 839 A.2d at 707.

The *Chinn* court explained that for a plaintiff to bring a claim of negligence arising from use of force, the plaintiff must establish "at least one distinct element, involving an

independent breach of a standard of care beyond that of not using excessive force in making an arrest, which may properly be analyzed and considered . . . apart from the intentional tort of battery and the defense of privilege." 839 A.2d at 707. In other words, a plaintiff must articulate elements of a distinct "negligent action and may not bootstrap from the battery proof alone, as one may not commit a negligent assault." 839 A.2d at 710.

The *Chinn* court examined a line of cases in which it found that an actionable negligence claim arose out of police use of force cases, specifically shooting cases. For example, in one case a police officer shot and killed someone and his estate brought a claim for negligent use of excessive force. 839 A.2d at 708. The court permitted the claim because there was "evidence of a police regulation on an officer's safe use of firearms, which established that a duty was owed to the decedent, a breach of which would constitute evidence of negligence." 839 A.2d at 709. These cases, the court noted, "involve[d] a negligent act that precede[d] the application of the relevant force of resort to firearms, i.e., prior to the pulling of the trigger." 839 A.2d at 711.

*Chinn* concluded by finding that the plaintiff "failed to make a separate and distinct claim for negligence apart from the battery allegations." 839 A.2d at 711. The plaintiff's allegations in *Chinn* were very similar to Unruh's: that "officers deliberately inflicted excessive force upon him, and the evidence he presented at trial was that officers continuously assaulted him without provocation." 839 A.2d at 711. But the court concluded that a battery cannot "transmogrify into negligence by the fact that the officers may have in the process mistakenly crossed the line of permissible force. Any 'negligence' was inherent in the battery itself, which remained a battery but now unprivileged." 839 A.2d at 711.

The *Estate of Randolph* court also cited *Ryan*, 245 Ariz. 54, an Arizona Supreme Court case which also held that excessive use of force by a police officer cannot be the

13

sole basis for a negligence claim. There, police pursued Brian McDonald after he swerved into the opposite lane of traffic. When McDonald's car was stopped, McDonald staggered out of the car and was nonresponsive to police commands. An officer released his police dog, Barry, who attacked McDonald's leg for approximately 30 seconds causing McDonald serious injuries. Later, authorities determined that McDonald had been experiencing a severe hypoglycemic event caused by his diabetes and lacked the cognitive functioning to understand what he was doing or respond to police commands. McDonald sued, in part, on a theory that the officer negligently used excessive force by deploying Barry. 245 Ariz. at 58. The Arizona Supreme Court rejected the claim.

The court held "that negligence and intent are mutually exclusive grounds for liability." 245 Ariz. at 60. Accordingly, negligent use of intentionally inflicted force was not a cognizable claim. 245 Ariz. at 60. Because the officer intentionally released Barry, the plaintiff could not raise a claim for negligence. The court did not foreclose the possibility of a negligence claim arising out of a situation in which an officer uses force. This could occur if there were "discrete acts of negligent conduct preceding the use of force." 245 Ariz. at 62. A plaintiff could also "plead negligence and battery as alternate theories if the evidence supports each theory." 245 Ariz. at 62. If, for example, there was evidence showing that the officer had unintentionally dropped Barry's leash and that resulted in McDonald's injuries, then a negligence claim may have been appropriate. 245 Ariz. at 62.

The *Estate of Randolph* court found *Chinn* and *Ryan* "instructive in the absence of more focused authority from the Kansas appellate courts." 57 Kan. App. 2d at 714; see also *Beltran-Serrano v. City of Tacoma*, 193 Wash. 2d 537, 442 P.3d 608 (2019); (delineating between negligent acts leading up to the ultimate use of force and the use of force itself); also *City of Miami v. Sanders*, 672 So. 2d 46 (Fla. Dist. Ct. App. 1996) (recognizing that "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of

force [where] the negligence component . . . pertain[s] to something other than the actual application of force during the course of the arrest. [Citation omitted.]").

It was on this basis that the *Estate of Randolph* court presumed that there were some circumstances arising out of a law enforcement officer's physical contact with a person that may give rise to a negligence claim under Kansas law. But the court did not hold that Kansas recognizes a claim for negligent use of excessive force. 57 Kan. App. 2d at 714. Instead, and importantly for our case, consistent with the holdings in *Chinn* and *Ryan* it found that intentional use of force *alone* could not provide a basis for a negligence claim. 57 Kan. App. 2d at 714.

Applying its holding to the facts of the case, the court noted that Officer Snyder's use of force in shooting Randolph was intentional and that it "virtually defines a civil battery if not otherwise privileged." 57 Kan. App. 2d at 714. Thus, the court ruled that "a claim for negligent use of force does not lie based on any version of the immediate encounter as Randolph emerged from his house and began to move across the front yard." 57 Kan. App. 2d at 714-15. It affirmed the district court's grant of summary judgment against the estate's claim for negligent use of force. 57 Kan. App. 2d at 721.

We concur that Kansas courts should not recognize a tort of negligent use of excessive force. But they should, as stated in *Estate of Randolph*, recognize that there may still be circumstances in which "a person might be able to bring a negligence claim under Kansas law arising out of an incident involving a law enforcement officer's physical contact with that person, resulting in an injury." 57 Kan. App. 2d at 714; see also *Ermini v. Scott*, 937 F.3d 1329, 1338 (11th Cir. 2019) ("[A]lthough Florida doesn't recognize claims for negligent use of force, it does recognize the commonsense proposition that 'distinct act[s] of negligence' can occur in conjunction with alleged excessive-force incidents.").

As seen in the caselaw, these situations could include where a separate duty, other than not to use excessive force, is established by a regulation or policy. See *Mills v. City of Overland Park*, 251 Kan. 434, 446-47, 837 P.2d 370 (1992) (noting that a mandatory department policy that uses unconditional language such as "will" rather than "may" could establish a special duty, breach of which could be actionable in negligence should injury occur). Or it could include cases where an officer acts unintentionally and the unintentional act injures the plaintiff. See *Clark v. Thomas*, 505 F. Supp. 2d 884 (D. Kan. 2007) (permitting claim that officer negligently used excessive force against plaintiff when officer unintentionally struck plaintiff with his vehicle while he was trying to drive next to plaintiff). However, we conclude that recognizing a negligent use of force claim based on only intentional acts is contrary to the principle that negligence is unintentional.

In this appeal, Unruh argues only that we should recognize a tort for negligent use of excessive force. He acknowledges that the force was applied intentionally but asserts that the degree of force used was negligent under the circumstances because he did not pose a threat to the officers. While Unruh's appellate brief creatively tries to make a distinction and argue that there was a separate negligent act, as we read the facts here it appears to us that in reality the officers' decision to continue the encounter in a violent way was merely a decision to use intentional force. Thus, we do not discern any negligent act which was separate from and preceding the application of force, and Unruh does not assert that the officers breached a standard of care beyond that of not using excessive force. For these reasons, this case is like *Estate of Randolph*, and the district court properly construed Unruh's claim as a claim for battery. Because the statute of limitations for battery had run by the time Unruh filed his petition, the district court properly granted summary judgment to Defendants on Unruh's negligent use of excessive force claims against the officers.

Unruh does make one additional argument that an officer's intentional use of unreasonable force is actionable in a negligence claim. In support of this argument, he

relies primarily on the federal district court case of *Price v. City of Wichita*, No. 12-1432-CM, 2013 WL 6081103 (D. Kan. 2013) (unpublished opinion). There, Lennon Price contended that a police officer negligently used excessive or unreasonable force while arresting him. The factual basis for Price's claim was that the officer stomped on his leg, breaking two bones, even though Price was not resisting arrest. The defendants filed a motion to dismiss asking the court to dismiss Price's negligence claims because, substantively, they were battery claims barred by the statute of limitations. 2013 WL 6081103, at *2. The court rejected this argument. 2013 WL 6081103, at *5.

The *Price* court began its analysis with *Dauffenbach v. City of Wichita*. In *Dauffenbach*, the court discussed when the breach of an officer's duty could lead to liability. The court stated:

> "Police officers have immunity from liability on claims arising from performance or nonperformance of an officer's general duties to prevent crime and enforce the laws. Liability arises only where an officer breaches a specific or special duty owed an individual. Such a special duty arises in two circumstances: (1) where there is an affirmative act by the officer causing injury; and (2) when a specific promise or representation by the officer is made under circumstances creating justifiable reliance. *McGeorge v. City of Phoenix*, 117 Ariz. 272, 572 P.2d 100 (1977); *Doe v. Hendricks*, 92 N.M. 499, 590 P.2d 647 (1979). Examples of situations within the first category are placing an individual under arrest or committing an assault. A line of Kansas cases which recognize that an officer is liable for false arrest or the unnecessary use of force lends support to the existence of a special duty arising from such affirmative acts. *Bradford v. Mahan*, 219 Kan. 450, 548 P.2d 1223 (1976); *Gardner v. McDowell*, 202 Kan. 705, 451 P.2d 501 (1969); *Bukaty v. Berglund*, 179 Kan. 259, 294 P.2d 228 (1956)." *Dauffenbach*, 233 Kan. at 1033.

The *Price* court focused on the special duty that exists where there is an affirmative act by the officer causing injury. 2013 WL 6081103, at *3. It reasoned that because Price alleged he was injured by the officer's "affirmative act of stomping on Price's leg," then

"*Dauffenbach* and its progeny suggest this could be the breach of a special duty if the fact-finder concludes the use of force was unreasonable under the circumstances." 2013 WL 6081103, at *4.

The reasoning of the *Price* court is not persuasive to us on the issues in Unruh's case. The *Price* court did not investigate the meaning of the term "affirmative act" as used in *Dauffenbach*. The *Dauffenbach* court cited two out of state cases—*McGeorge v. City of Phoenix*, 117 Ariz. 272, 572 P.2d 100 (1977) and *Doe v. Hendricks*, 92 N.M. 499, 590 P.2d 647 (1979)—for the proposition that a special duty may arise when there is an affirmative act by the officer causing injury. Neither of these cases provide that the affirmative act giving rise to the duty can be the same act that breaches the duty. They each provide the same three examples of an affirmative act that might give rise to a special duty, summarized as follows:

"In the narrow field of police protection, however, we can discern certain general situations where duty toward specific individuals can be found. . . . Another general situation is where a police officer affirmatively causes damage to an individual. An example of this is *Gardner v. Village of Chicago Ridge*, 128 Ill.App.2d 157, 262 N.E.2d 829 (1970) where the victim of an assault was brought by police to a place where he could identify his three assailants. Because of carelessness on the part of the police, one of the assailants broke loose and attacked the victim. Again, to the same effect, although involving a city sewer inspector, is *Smullen v. City of New York*, 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971). In that case the inspector observed an open trench and directed an individual to climb into it, whereupon he was killed when it collapsed upon him. The court said the inspector narrowed the duty to the individual by his 'positive action assuming direction and control.' Another instance is where a city fire department ordered a salvage operator to fill the cargo compartments of a damaged ship with carbon dioxide to reduce the possibility of an explosion. Instead, the chemical produced an explosion causing a loss of the ship. The court found that a duty existed in this situation when the fire department elected to act. *In re M/T Alva Cape*, 405 F.2d 962 (2d Cir. 1969)." *McGeorge*, 117 Ariz. at 277; accord *Doe*, 92 N.M. at 503.

18

These examples all involve an affirmative act that established a duty independent of the act that harmed the plaintiff. These examples of affirmative acts giving rise to a special duty do not support the argument that an officer's intentional injury of a person gives rise to a special duty, actionable in negligence, not to use excessive force in intentionally injuring that person. This is consistent with the conclusion drawn in *Estate of Randolph*, where the court held that a negligence claim was inappropriate where injuries were caused by an intentional application of force. It is also consistent with the suggestions in *Chinn* and *Ryan* that a negligent act must precede the use of force. *Chinn*, 839 A.2d at 711; *Ryan*, 245 Ariz. at 62. For these reasons, we will adhere to the reasoning in *Estate of Randolph* rather than the *Price* court's contrary conclusion.

The district court's decision to grant summary judgment on Unruh's negligent use of excessive force claim against the officers, as well as his derivative claims against Chief Ramsay and the City based on the officers' conduct, are affirmed. Though labeled as negligent use of force claims, Unruh's claim was truly for battery because it was based on intentional acts.

*The district court did not err by granting summary judgment to the City of Wichita and Chief Gordon Ramsay on Unruh's claims of negligence.*

In addition to bringing claims against Chief Ramsay and the City that were derivative of his claims against the officers, Unruh also brought other claims against the City and Chief Ramsay. He claimed the City was negligent for retaining Chief Ramsay and failing to train its officers. And he claimed Chief Ramsay was negligent for retaining Officers Weidner and Pearce and failing to properly educate, train, discipline, and supervise the officers regarding use of force and anger management.

The district court held that Unruh's claims against Chief Ramsay and the City were barred by both the public duty doctrine and the statutory immunities set forth in the

19

Kansas Tort Claims Act under K.S.A. 75-6104(e) and (n). The district court further ruled that Unruh's negligent supervision and training claims failed for lack of evidence.

Unruh argues that the district court erred when it held that the public duty doctrine barred his claims against Chief Ramsay and the City. However, he makes no argument as to the district court's other bases for granting summary judgment to the City and Chief Ramsay, including the immunities they claim under the Kansas Tort Claims Act.

"When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, an appellate court may decline to address the appellant's challenge to the district court's ultimate ruling." *State v. Novotny*, 297 Kan. 1174, Syl. ¶ 1, 307 P.3d 1278 (2013). On that basis alone, we could decline to reach the merits of Unruh's claims that the district court erred by granting summary judgment to the City and Ramsay. However, we will briefly address Unruh's complaints about the district court's interpretation of the public duty doctrine as it applies in this case.

Unruh's argument on the public duty doctrine also fails on the merits. Under the public duty doctrine, "a plaintiff suing a governmental entity in negligence cannot establish the duty requirement of its claim when the duty is a public one, i.e., owed to the public at large and not to any particular individual." *Keiswetter v. State*, 304 Kan. 362, 365, 373 P.3d 803 (2016). To prevail, a plaintiff must "show a special relationship that gives rise to a specific duty owed to him or her." 304 Kan. at 365. Relying again on *Dauffenbach*, Unruh argues that a special duty existed because the officers acted affirmatively in using excessive force on him. By this argument, he is implicitly calling on us once again to embrace the holdings of the *Price* court, which we previously have rejected. We need not repeat our reasoning here, other than to note we have considered his argument and believe the district court properly interpreted the public duty doctrine as applying to the public at large, and not to Unruh individually.

*The district court did not err by granting summary judgment on Unruh's claim that defendants improperly trained Cassius, a police dog.*

In his final claim on appeal, Unruh argues that the district court erred in granting summary judgment on his various claims that Defendants improperly trained and deployed Cassius. The district court found "no evidence that more or different training, or different handling by Officer Weidner, would have produced a different result. There [was] no evidence that Cassius' behavior was the result of improper use or training."

The record supports the district court's ruling. It is correct that a failure to train theory is a recognized type of negligence claim in Kansas. *Reardon for Estate of Parsons*, 310 Kan. at 904-05. And as we have noted, a negligence claim requires a plaintiff to prove four elements – duty, breach, causation, and damages. 310 Kan. at 903. Evidence of a failure to train goes to the second element, i.e., whether there has been a breach of a legal duty. 310 Kan. at 904-05. To succeed on a claim based on negligent training, a plaintiff must "establish[] facts showing that more or better training would have prevented the harm." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 283, 261 P.3d 943 (2011).

On this point, Unruh argues simply: "The facts surrounding the incident itself create the inference that Cassius was improperly trained. Police canines are not supposed to attack arrestees absent a command from their handlers." In the motion and response to the motion for summary judgment, the parties did not controvert the fact that "[Officer] Weidner gave the command for Cassius to engage Unruh as, or just after, Cassius engaged Unruh." Unruh asserts that "[t]he logical inference is that something in the dog's training was deficient."

Evidence that Cassius attacked absent command does not amount to evidence that more or better training of Cassius or the officers involved would have prevented the harm

21

that resulted to Unruh. Unruh fails to identify any additional evidence that supports his claims, and a review of the record discloses none. Accordingly, Unruh failed to carry his burden of proof on the failure to train claims.

Affirmed.